Manotas v. Ocwen Loan Servicing, LLC So, Mr. McLaughlin, whenever you're ready to go. May it please the court, I'm Henry McLaughlin, I represent the appellants in this case. I would like to emphasize that part of this appeal that contends that the statute of limitations does not bar a case involving a harm which has not yet occurred. The parties entered into a deed of trust. The deed of trust said that if the borrowers were in default, the lender could send a notice that told them they were in default, what it would take to cure it, and a deadline, and after that deadline, they would face acceleration and foreclosure. The deed of trust said that that notice was required to say that the borrower had a right to reinstate even after acceleration. The plaintiffs in this case filed an amended complaint that set forth in detail that the notice that was being relied upon by the lender, which at the time this lawsuit was filed, the lender had sent a notice for foreclosure, which by law is an acceleration. And the lawsuit said that the notice said instead of saying that they had the right to reinstate, which they did under the deed of trust, it's an absolute right to reinstate, said you may be entitled to reinstate if allowed by applicable law. Counsel, I think we're generally familiar with the factual background of the case. At least to me, one of the crucial issues here is the effect of the Virginia Supreme Court's decision in Kerner v. Wells Fargo Bank, which would seem to undercut a large part of your argument. So you may want to move on to address why that would not be the case. The Kerner case was not a suit for rescission. It was not a suit to stop a foreclosure. It was a suit for money damages. And in the Kerner case, the lawsuit was filed exactly five years after the foreclosure, but the prior notice for the foreclosure by Virginia law had been an acceleration, and that had occurred sometime before that. But what do you do with the—and I have the case here, and you factually agree with the distinction, but it says that if for some reason the foreclosure sale had taken place beyond five years from the date of approval, Kerner could still have filed his breach of contract claim self-annulmental damage and if successful, established a collateral estoppel basis for barring any future foreclosure sale that violated the contractual cure provision. In the footnote it cites, it talks about that could be done in an injunctive declaratory relief action. So, I mean, I get the factual distinction. That makes sense. But doesn't the opinion itself cover the exact scenario you're talking about? Well, there is another case that came out, a lot of it has been called Mary Harris Mead, and that was an unpublished opinion in which—which came out after Kearns. Well, are unpublished opinions precedent in Virginia? They can be cited. They're not binding. Okay. But it is something that can be considered. And in that case— But Kearns is published, and it is binding. Yes, right. Kearns is published, but it is binding as to the decision on the facts of the case, and decision on the facts of the case does not have to do with— does not have to do with stopping a foreclosure prior to the sale or rescission. And those are cases— Well, in a nonjudicial foreclosure state like Virginia— Yes, sir. Upon whom is the burden placed to grant a claim of breach? Once the procedure that's in the Deed of Trust to initiate the foreclosure has begun, isn't that burden upon the giver of the mortgage? Well, that's right. The answer to that, Your Honor, I believe is somewhat complicated. In the Squire case, there was a nonjudicial foreclosure sale, which was conducted without a precondition having been met. In that case, it was the face-to-face meeting under the FHA rules. The Virginia Supreme Court held that the foreclosure could not be set aside because a buyer who bought it had no notice of the defect, but went on to say that a case could be brought against a substitute trustee because they foreclosed without the precondition having been met, even though the borrower did not raise that at all. That was a 4-3 decision by Justice Powell, but it indicates that there is an affirmative duty of the substitute trustee not to go forward if there is no hazard. That proceeding was brought by the mortgagor, correct? I'm sorry? That proceeding was brought by the mortgagor? By the borrower. So tell me how that helps you out in terms of the burden and nonjudicial foreclosure. On the subject of who has the burden to stop the foreclosure, that indicated that the trustee has the burden and that the trustee has an affirmative duty to make sure it's being done correctly. Now, it is, however, true that there is case law, including the Matthews case, that say that the borrower can sue to seek an injunction prior to the foreclosure. And if the lender has not complied with a precondition, that the borrower can bring a lawsuit prior to the foreclosure. And it goes on to say that after foreclosure, the borrower can sue for money damages. Well, Kearns sued for money damages after foreclosure. The statute of limitations began to run when there was an acceleration. The record is somewhat murky in this case as to when acceleration took place. The notice, the pre-acceleration notice, was sent more than five years before, but it's not entirely clear when there was acceleration. Clearly there was one when the notice for the foreclosure took place, and that was less than five years before this lawsuit was filed. What would be your best Virginia case to say that, in effect, raising these affirmative defenses offensively is not bound by the statute of limitations? Well, the best Virginia case would be a case out of Frederick County Circuit Court, which was Merwin Briscoe v. Dodger Bank. Merwin Briscoe v. Dodger Bank was- But not a Supreme Court case. Is not a Supreme Court case. The best Supreme Court case would be the unpublished opinion, the unpublished order in Murray Harris Meade v. Wells Fargo. Is that in your brief? No, it's not. It's not. And in fairness, I should say that I went and looked it up, and that came out in December, and the last brief was in January. But the points that were raised in the briefs, while they didn't cite the Murray Harris Meade case, do- The points? You're talking about the points in your case or this other case? In this case. The points that are raised do support, I submit, the position, which is raised very strongly, which is that you are not precluded from trying to stop a future wrong by something that's happened in the past. Let me switch gears a little bit. Is it your position that in terms of compliance with the DITA Trust's acceleration notice requirement, that absolute compliance is required, or is substantial compliance sufficient? That issue is somewhat unclear in Virginia law. Doesn't Townsend make it pretty clear that it's not absolute compliance? Well, Townsend, I'm familiar with Townsend. The Townsend case was a case in which it said you can argue that instead of saying you can file a lawsuit, and that was also in the Matnick case. And what those cases said, it was tantamount to compliance. It was Judge Agee who, in justice of the Supreme Court, wrote the opinion in the Bayview case, which upheld a six-figure jury verdict for not sending the cure notice by certified mail when it was sent by regular mail. In the Squire case, just – The statute of limitations wasn't an issue in that case. It was not the issue in that, no. But I'm going to the question I think he asked, which is, do you have to have absolute compliance or substantial compliance? In the Squire case, Justice Cleo Powell cited the Bayview case and said that in the Bayview case, the borrowers had not said what they would have done if they had gotten a notice. And the circuit court case, some circuit courts have ruled that that indicates strict compliance. Other courts have held that the question is one of substantial compliance. What's your position? Are you saying it's strict? I think it ought to be full compliance, which is somewhere in between, I think. And in particular, in a case like this where you've got – you can sense that someone on the 87th floor decided we're going to create a notice that will reduce – that will be less than what the borrower is entitled to. We'll do this on purpose and we'll do this in hundreds of thousands of these notices because we'll understand that in the law of large numbers, some people are not going to go forward because they will misunderstand what their rights are. And so – Did you plead – I looked for it and I don't think I saw it. Did you plead that your clients relied on that notice in any detrimental way? No, sir. So what we are saying is, is that not that this is something like a fraud case, but rather that you've got someone's home. You cannot take it unless – the borrower says, you can take my home provided you do these things. And until you do these things, you can't take the home. And so it is substantial compliance in that sense in that you can't do it wrong, you've got to do it right. Now, that's not quite the same as what happened in the Townsend case or in the Matanik case. What that case was – Well, in this case, if I'm remembering this correctly, I mean, there are findings as to dates certain when your clients either were or should have been on notice of alleged defaults by the lender. And the question became, well, has the statute of limitations run since they became aware or should have been aware? And under Virginia law, the damages would have started to accrue on that date. Have they acted within the statute of limitations? Isn't that really the issue in this case? Because I don't think you've challenged as clear error any of the findings by the district court. What we've said is that in the appeal is that it was early to say the statute of limitations had run on that part of the case that saw the declaratory judgment that they were not entitled to foreclose. And those damages – You're claiming legal error by the district court, not any factual error. Well, there wasn't any dispute about the facts at all. It was the facts that were pled by my client, by the appellants, because the case was dismissed on 12B6. So there wasn't any question about the facts. But I want to emphasize that the notice, if the notice did not comply, then they were not entitled to foreclose. That is, I submit the issue. And the statute of limitations cannot run on something that has not yet happened. And the damages would be when they had the foreclosure. That is not – It is true that under Kearns my clients could not sue for money damages, but Kearns didn't reach the question of rescission or even stronger a prospective motion for declaratory judgment. Thank you. Thank you very much. Mr. Lynch. May it please the court, my name is John Lynch and I represent the Appalachians, Aquin, and U.S. Bank. I wanted to start just to give a little bit of historical perspective on the case. There's been no payments on this loan since late November or early – and we're here in 2019. And Judge Agee, I think you clarified exactly what the issue is in the case, and we agree that Kearns is on point exactly. What was the alleged defect that prohibited my client from foreclosing? And that occurred by their own allegations in September of 2010, and they admit the foreclosure was on for sale in 2011. Five years from that point, it's time barred. They didn't file their case until later in 2017. I think some other things in the allegations are important in this case, and also the court could take judicial notice of. The borrowers in this case filed a lawsuit, actually filed their first lawsuit. I don't have the – let me look and see what the exact date was. But the first lawsuit was in March of 2011, and they filed a lawsuit against a settlement agent and got a default judgment and did not file any types of claims against the current mortgagor or the current trustee. They got a default judgment. And then several years later, before my client, U.S. Bank, as a trustee, could foreclose, U.S. Bank actually filed a lawsuit, the second lawsuit, against the borrower in Fairfax because they had to clean up the title to make sure that default judgment did not prohibit a foreclosure. So are you saying that there's any preclusive effect from those lawsuits or that that somehow is just facts that are relevant to the statute of limitations issue? Because it's not a decision on the merits in either of those cases that would be preclusive. Is that correct? I think arguably, Judge Quattlebaum, that in that second lawsuit, and we didn't raise this, but I'm just going to tell you, it could have been a compulsory counterclaim against the borrowers, that they had any defects at that time, that that could have been argued. But you didn't argue that below. We did not argue that below. We feel like this is a straightforward breach of contract, five years, under Kearns, which they did not cite. And I think the point of whether they were seeking monetary damages or any type of equitable declaratory relief, the Supreme Court does not make that distinction at all. And we believe it's time barred under each one of the accounts. They didn't make any arguments on RESPA or fraud. I believe Mr. McLaughlin is only arguing the declaratory judgment and the breach of contract counts. But Kearns says acceleration is enough to start the injury, and then that's when the breach accrued and you have five years to make that claim. We have not seen any Virginia Supreme Court cases, published or unpublished, or even any circuit court opinions that we've seen, that change that fact. And we believe the case is time barred. We do, which is part of the record, Judge Brinkema gave them two shots. And Judge Brinkema sent everyone to a settlement conference and stopped the first foreclosure. And after the settlement conference didn't work, and then she dismissed the case on statute of limitations. There's no tolling that applies here at all. And we believe the court should affirm the decision. I'm familiar with this case opposing counsel. It's apparently an unpublished Virginia Supreme Court order, Murray Harris. There's no 28J letter on this. This is the first we've heard of it. I am not, Judge Agee, I'm sorry. But unless the court has any questions, we rely on what we said in the brief. Thank you. Okay, thank you very much. Mr. McLaughlin, you've got some rebuttal time left. I want to briefly respond to what I submit with the jury arguments made by opposing counsel that no papers have been made. They have a remedy on that. It's a very quick remedy. All they need to do is send a proper cure notice. Bam. And have it be correct. And if my clients don't then cure them, then they would be free to foreclose. I submit what they want is a precedent that if they send a notice and they don't then come back and say, we are getting ready to foreclose, and don't make it clear that they've actually accelerated, which it's not in the record that they did before they sent the notice, which the suit was filed shortly thereafter. They want to have a precedent that that is okay. And they also want a precedent that they can send out a notice like this and have it be deemed to be substantially correct. And that gives them free reign to go into the 87th floor and look through things and cut down and send less. And I submit that's not appropriate. And also, briefly, there's no compulsory counterclaim in Virginia. There is in federal law. So the case that was raised that was brought in the circuit court of Fairfax, there's no compulsory counterclaim, so there's no res judicata on that. And he was good enough to acknowledge that they didn't, that they hadn't raised that. The question was not decided by Kearns. Kearns was a case involving a money damages case, the court held there, and it was agreed in that case that there was an acceleration more than five years before the suit was filed. And the court held that you couldn't get money damages. I think it might, I know in the reply brief my co-counsel asked the court to consider certifying this question to the Virginia Supreme Court, and it wouldn't slow them down. They can file this proper notice any time they want. There's no injunction preventing that. But to ask your consideration to certify it to the Virginia Supreme Court, a question which has not been decided, which is there's really two issues here. One is can you stop a foreclosure prior to the foreclosure? Well, the terms of the deed of trust have not been met to allow a foreclosure. Can you stop it on that basis? And secondly, if there's already been a foreclosure, can one get rescission but not money damages? But that case is stronger than a rescission case because here, as was stated in Matthews, the plaintiff has brought suit prior to the foreclosure. There has not been a foreclosure. And the plaintiff can, and I don't mean to say this too many times, but the plaintiff has got a remedy. It's not being held back. There's no injunction in place. It can move to foreclose, but it should not be allowed to do that based on not yet having complied with the requirement that is under the deed of trust that it has to comply with. And, you know, there are centuries of law about the special circumstances of a home, and it goes all the way back to English law. And one of the justices of the U.S. Supreme Court in a dissenting opinion said the home is the seat of the family. And another justice in another dissenting case said that the rights of the home go beyond the special protections of contract law. Now, I don't mean to say that a borrower is not fully subject to contract law or a deed of trust because the borrower is. The borrower gets the money, and the borrower has to pay it back. But the parties have agreed in these cases that the lender cannot foreclose until the lender sends a proper appeal notice. And this is not tantamount to compliance where you say you can argue rather than file suit. That's what Townsend held, and that's what Magnick held. Here's a case that says you may be entitled to rescind if the law provides, and that's not correct. The deed of trust says in no uncertain terms you are entitled to reinstate, and they should not be able to foreclose unless they meet the requirement to meet the terms of that. Well, thank you for listening to me. Thank you very much. We'll come down and bring counsel and take a very brief recess. We'll proceed to the rest of the document. The Honorable Court will take a brief recess.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.